UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

ELEAZAR MARTINEZ MEDINA,

          Defendant.

**DECISION AND ORDER**
20-CR-29-A

Defendant Eleazar Martinez Medina is charged in a 22-count Superseding Indictment (Dkt. No. 24) returned April 16, 2020, along with seven co-defendants, with violating two of those counts, *i.e.*, multi-drug conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), 856(a)(1), and 846 (Count 1); and possession with intent to distribute, and distribution of, 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 3).

Pursuant to 18 U.S.C. § 3145(b), Defendant appeals (Dkt. No. 47) a detention order (Dkt. No. 51-5) of Magistrate Judge Alka Sagar, of the Central District of California where the detention hearing was held, prior to Defendant's arraignment in the Western District of New York. The Government submitted a response in opposition (Dkt. No. 51), Defendant filed a reply (Dkt. No. 58), and the U.S. Probation Office submitted a memorandum dated September 1, 2021. The Court heard oral argument on the bail appeal on October 6, 2021.

Upon *de novo* review of all the circumstances, and for reasons stated below, the Court finds pursuant to 18 U.S.C. § 3142(e) that no conditions of release, or combinations of conditions, will reasonably assure the safety of the community or

reasonably assure Defendant's appearances as required.  Accordingly, the Court affirms the detention order.

## **BACKGROUND**

At the time of the detention hearing, which was held on February 25, 2020 and continued on March 2, 2020 in the Central District of California before Magistrate Judge Sagar, Defendant was charged in a one-count Indictment (Dkt. No. 1), returned February 20, 2020, with just one other defendant, David Washington, with conspiracy to possess with intent to distribute, and to distribute, 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

On March 20, 2020, Defendant was arraigned on the Indictment in this District before Magistrate Judge H. Kenneth Schroeder, Jr.  The defense moved for a second detention hearing before Judge Schroeder, but that request was denied, and Defendant was directed to file any appeal of the California Magistrate Judge's Order of detention with this Court.

The Government's proffer during the detention hearing before Magistrate Judge Sagar was detailed, and several exhibits were entered on the second day of the hearing when a DEA Special Agent who had been involved in the investigation of the case testified.  In sum, the Government proffered that Defendant was the out-of-state supplier in a large-scale drug organization in Buffalo, New York, delivering approximately 20 kilograms at a time to his co-defendant, David Washington, who resides in Buffalo.

The exhibits entered at the hearing (including records from Defendant's Uber account and corroborating geolocations based on Defendant's Gmail account) showed that Defendant made multiple visits to Buffalo in 2018 and 2019.  Specifically, though,

on February 15, 2019, Defendant was initially at 69 Bennett Village Terrace in Buffalo. He then proceeded to a Walmart parking lot in Chili (close to Rochester, New York), and then returned to 69 Bennett Village Terrace before finishing off the evening at 73 Rogers Avenue in Buffalo.  The Government set forth this proof, in conjunction with still footage from a surveillance security camera at the Chili Walmart and pole camera footage focused on the outside 69 Bennett Village Terrance, which both captured Defendant on this date.  As explained by the DEA Special Agent, "the criminal organization somehow coordinated the arrival of [a] tractor-trailer from areas distan[t] to . . . [the] great[er] Buffalo, Rochester area", and Defendant retrieved a duffel bag (presumably full of drugs) from the tractor-trailer driver/ uncharged coconspirator in the Walmart parking lot before delivering the bag to 69 Bennett Village Terrace.

Defendant left Buffalo five days later, on February 20, 2019, and on February 22, 2019, a traffic stop in California was performed on Defendant and approximately $650,000 in U.S. currency was seized from him, which the Government understood to be payment for the bulk quantity of cocaine that he had just delivered to the Buffalo, New York area.  The DEA Special Agent testified that he believed when the currency was seized from Defendant, Defendant was driving a rental vehicle and no one else was present in the car, and the currency was located in the backseat inside backpacks.

The two residences Defendant frequented while he was in Buffalo are significant because, the Government proffered, 69 Bennett Village Terrace is where Washington was arrested (the residence is owned by co-defendant David Burgin's sister), and Burgin owned 73 Rogers Avenue.  Approximately a year after the subject visit by Defendant to Buffalo, in February 2020, a search warrant was executed at these

3

residences and various controlled substances, a significant amount of U.S. currency, drug paraphernalia, and "traps" were uncovered there.

On cross-examination, when questioned whether Defendant was "more than just [a] courier", the DEA Special Agent testified, "I believe that based on the totality of the investigation and other information that was revealed[,] that showed that he's not just going to that Walmart and getting that bag without having other involvement."

At the conclusion of the detention hearing, Magistrate Judge Sagar stated orally on the record (*see* Dkt. No. 51-3, pp. 30-33) his reasons for denying bail.  The Court finds that the Magistrate Judge's oral findings were thorough and well-reasoned, which held that Defendant failed to rebut the presumption of detention and "the testimony that was presented here in court strongly supports a finding that bail should be denied in this case."  The Magistrate Judge found that no condition or combination of conditions would reasonably assure the appearance of Defendant as required, or the safety of any person or the community.  An Order of detention (*see* Dkt. No. 51-5) was entered as well, stating that Defendant was to be "detained until trial."  The Magistrate Judge's reasoning as to risk of non-appearance was that Defendant's bail resources proffered were insufficient and he had a history of travel to Mexico; the Magistrate Judge also iterated Defendant's conduct in the case as testified to by the DEA Special Agent. Magistrate Judge Sagar separately reasoned that the allegations in the Indictment and Defendant's role in the conspiracy, and Defendant's criminal history of a 2009 felony conviction for receiving stolen property, rendered him a danger to the community.

Pretrial Services in California initially recommended detention of Defendant, but later at the bail hearing changed its position and recommended release on an

unsecured appearance bond signed by both Defendant's girlfriend and daughter in the amount of $75,000 or $80,000.  On March 20, 2020, Pretrial Services in this District recommended Defendant remain in custody pending a disposition in this case, and per an updated memorandum dated September 1, 2020, Pretrial Services continues to recommend detention.

## DISCUSSION

Under the Bail Reform Act of 1984, a criminal defendant awaiting trial must be released on bail unless the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b). When reviewing a magistrate judge's detention order, the district court performs *de novo* review of that order.  *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985) (finding that a district court "should not simply defer to the judgment of the [M]agistrate, but [should] reach its own independent conclusion").  When conducting *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence.  *See e.g. United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).  The appeal of a magistrate judge's pretrial detention order to this Court is to be "determined promptly."  18 U.S.C. § 3145(b).

The Government has the burden to show by clear and convincing evidence that the danger posed by the defendant cannot be alleviated by any combination of available bail conditions.  *See United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985).  It also has the burden to show by a preponderance of the evidence a serious risk of flight for which no conditions will reasonably assure the defendant's appearances in court and as otherwise required.  *Id.*

In determining whether there are conditions of release that will reasonably assure the safety of the community and a defendant's appearances as required, the Court must consider the factors listed in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g) (ellipses supplied).

For serious narcotics offenses, crimes like the Title 21 offenses punishable by a maximum term of ten years' imprisonment or more charged in the Indictment and Superseding Indictment against Defendant, a finding of probable cause to believe that such an offense was committed, and that the defendant committed it, gives rise to a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3). However, a grand jury indictment alone, such as the indictments (Dkt. Nos. 1, 24) returned here, establishes probable cause; no

independent finding of probable cause by the Court is necessary. *See United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

When the § 3142(e) rebuttable presumptions apply, the Government retains the burden of persuasion if it is seeking detention, and "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption." *United States v. Rodriguez*, 950 F. 2d 85, 88 (quotation omitted) (2d Cir. 1991). "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant." *Id.* (quotation omitted). The § 3142(e) presumptions, if unrebutted, are alone sufficient to sustain the Government's burdens of proof on danger and serious risk of flight. *See id.; see also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

On appeal, the defense argues that there are conditions that will reasonably assure the safety of the community and Defendant's appearances as required, and has proposed that Defendant be released to home confinement or home detention with electronic monitoring.[1]  Defendant's bail appeal centers on two arguments for a "substantial and material change in circumstances", *i.e.*, (1) Defendant's susceptibility to COVID-19; and (2) Defendant's landlord's / friend's willingness to post his property in Los Angeles, California as security to ensure Defendant's appearance in Court.

In turn, the Government argues that the § 3142(g) factors justify Defendant's continued detention, particularly the strength of the Government's case.  The U.S. Probation Office likewise continues to recommend detention and refers to the Pretrial

---

[1] Defense counsel clarified during oral argument that Defendant is requesting home confinement.

Services Report that lists factors that work against Defendant in assessing nonappearance and dangerousness.

In this case, the Court finds that Defendant poses a serious risk of flight and a danger to other persons and the community, and that Defendant has not rebutted the presumption of detention.

Both the nature and circumstances of the offense, and the weight of the evidence supporting the charges, weigh heavily in favor of detention.

As summarized above, the Government's presentation at the detention hearing did not consist of solely an attorney proffer; rather, the Special Agent testified, and the Government has evidence consisting of two video recordings capturing Defendant on film, electronic records pinpointing Defendant's location while in Buffalo (Dkt. No. 51-4, pp. 1-20), and over $650,000 seized from Defendant in Los Angeles just after his trip to Buffalo in February 2019.  A PowerPoint presentation was also displayed concerning the events in Buffalo and Chili in February 2019 (Dkt. No. 51-4, pp. 21-60).  Again, the Government's theory is that the bag Defendant picked up in the Walmart parking lot contained a bulk quantity of cocaine.[2]  Defendant is charged with possession and conspiracy charges as to a substantial amount of cocaine.  The Court finds that the circumstantial evidence against Defendant is strong.  The Government also rightly points out that narcotics trafficking, generally, poses a danger to the community.

In addition, the charges carry high penalties with a sentence of imprisonment upon potential conviction that is likely to be long, meaning Defendant has a stronger motive to flee.  *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007).  If

---

[2] By contrast, the defense's theory is that Defendant is merely a drug courier.

convicted of the possession offense, alone, Defendant faces a mandatory minimum of 10 years' incarceration, and a maximum of life.

The history and characteristics of Defendant weigh both for, and against, pre-trial detention.

It appears without question that Defendant has strong family ties and community ties, and a lengthy term of residence in his community.  According to the Pretrial Services Report,[3] Defendant was born in Mexico and lived for 31 years in Los Angeles, California, with extensive family ties in that area.  He became a permanent U.S. resident 20 years ago.  Prior to his arrest, Defendant lived in a duplex with his girlfriend and girlfriend's 10-year-old son.  Defendant has three children from prior relationships, ages 29, 27, and 20 years-old at the time of his interview, who all live in Los Angeles.  At the oral argument on the bail appeal, the defense argued that Defendant also has three grandchildren who live in Los Angeles.

Furthermore, Defendant is self-employed, having owned and operated an auto-repair business for almost three decades from his home in Los Angeles, along with his son.  He and his girlfriend have further income from renting the rear unit of their residence as a "sober living home", to clients from an agency.  Defendant's girlfriend is reportedly employed as a drug counselor.[4]

---

[3] The report states that the background information was unverified because Defendant could not recall his family members' telephone numbers.

[4] The Government argued in its papers that Defendant's use of his residence as a sober living home exhibits his "morally corrupt character" (*see* 18 U.S.C. § 3142(g)(3)(A)), as he "profits by exploiting individuals suffering from addiction first by selling them drugs and then hypocritically collecting on the social support network funding their recovery."  While the Court does find Defendant's girlfriend's career and Defendant's financial resources in this respect odd and possibly concerning, these allegations by the Government are without further support.

The Government points to Defendant's "history of regular and recent international border crossings to Mexico", having confirmed with Homeland Security Investigation Defendant's trips to Mexico on August 28, 2017; January 9, 2018; February 25, 2018; September 1, 2018; and February 10, 2020.  The defense argues that the Government mistakenly characterizes these trips to Mexico as "regular", as they occurred only once or twice per year.  Regardless of how the regularity of these trips is characterized, Defendant reported having a valid Mexican passport and a history of international travel to Mexico.

Defendant has one prior felony conviction from 2009, for receiving known stolen property, for which he served 90 days in confinement and 3 years of probation.  The Government stated at the oral argument that this criminal history results in a Criminal History Category II.  The Court finds that Defendant's criminal history is not "minimal" as described by the defense but agrees with the Government that it is "not lengthy."

As to Defendant's physical and mental condition, the defense argues that Defendant is more vulnerable to complications of COVID-19 if infected because he has only one kidney and he is over 50 years old.[5]

While the Court is cognizant of the unprecedented risks posed to individuals and the public by the rapidly unfolding pandemic, Defendant reported being "in good physical and mental health, except for occasional migraines", and no history of

---

[5] A couple provisions of the Bail Reform Act possibly apply here.  *See* 18 U.S.C. §§ 3142(f), (i).

Attached to Defendant's reply papers is a copy of Defendant's medical records that according to the defense "outlin[e] the fact that [Defendant] has only one kidney."  The filed exhibit (Dkt. No. 58-3), however, does not appear to list this medical condition.  It is only page 1 out of 5, so perhaps another page was inadvertently omitted that did confirm this medical condition.

substance abuse, for his Pretrial Services Report.  There is no allegation that Defendant's physical health has since declined.  At oral argument defense counsel described communication issues with Defendant due to the pandemic.  However, since the advent of vaccines, restrictions and other impediments to in-person visits at local facilities have been curbed.

With respect to danger to the community, there is plenty of evidence that Defendant possessed, and intended to distribute, 5 kilograms or more of cocaine, and circumstantial evidence suggests that he was involved in a drug conspiracy with his co-defendants.  The danger that Defendant poses is the exactly the sort of danger to the community that prompted Congress to enact the presumption that persons charged with serious drug offenses pose a danger while on pretrial supervision.  *See Leon*, 766 F.2d at 81 (danger to the community includes "the harm to society caused by [the significant risk of continued] narcotics trafficking").  In addition, GPS monitoring while on home incarceration does not prevent someone from making money distributing illegal controlled substances while on pretrial release.

The Court has considered each of the § 3142(g) factors in this case.  After carefully analyzing all the circumstances, the Court finds that Defendant has failed to overcome the presumption that he is a danger to the community or the presumption that he is a flight risk.

The serious nature of the charges against Defendant and the lengthy period of incarceration he is potentially facing, as well as other § 3142(g) factors as described above, tip the balance in favor of pretrial detention.  With respect to the proposed conditions of release to home confinement, electronic monitoring devices "can be

circumvented" and "rendered inoperative."  *United States v. Orena*, 986 F.2d 628, 632

(2d Cir. 1993).  Defendant further proposes that his landlord and friend is willing to post

property bail of a significant amount, the market value of which is $840,000 with

$235,000 in equity available (*see* Dkt. No. 58-1 and 58-2).  That property is where

Defendant's fiancé and his family lives, and the defense reasons Defendant thus would

not put his family in jeopardy, and that this proposed surety rebuts the presumption of

dangerousness and flight risk.  The Court disagrees.  Even if the proposed property bail

were to mitigate the risk of flight, it would not do so as to dangerousness.

The Court finds that Defendant is a flight risk and danger who must be detained

pending trial, as there are no conditions of release that will reasonably assure the safety

of the community or reasonably assure Defendant's appearances as required.

Last, the Court notes that the procedural posture of this case is currently in the

pretrial phase, with Defendant and co-defendants continuing to litigate suppression

motions and other requests for relief.  As soon as this case is ready for trial and to the

extent there is no pretrial disposition, the Court will add the case to its trial calendar and

expeditiously advance it to trial.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion pursuant to 18 U.S.C. §

3145(b) (Dkt. No. 47) to revoke Magistrate Judge Sagar's pretrial detention order (Dkt.

No. 51-5) is denied.

Defendant shall remain committed to the custody of the Attorney General

pursuant to 18 U.S.C. § 3142(e) for confinement in a correctional facility separate, to the

extent practical, from persons awaiting or serving sentences or being held in custody pending appeal.

The Attorney General shall afford Defendant a reasonable opportunity for private consultation with counsel.

Finally, the Court directs that on order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of his appearance in connection with any Court proceeding.

This ruling is without prejudice to Defendant's right to the presumption of innocence, and to his right, pursuant to 18 U.S.C. § 3142(f), to seek reconsideration of his pretrial detention based upon changed circumstances.

**SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   November 5, 2021